McCORRISTON MILLER MUKAI MacKINNON LLP

ROBERT G. KLEIN       #1192-0
KURT W. KLEIN         #10357-0
500 Ala Moana Boulevard
Five Waterfront Plaza, 4th Floor
Honolulu, Hawai'i 96813
Telephone: (808) 529-7300
Facsimile: (808) 524-8293
E-Mail: *klein@m4law.com;*
        *kwk@m4law.com*

Attorneys for Plaintiff
GAURAV THAKRAL, M.D.

FIRST CIRCUIT COURT
STATE OF HAWAII
FILED

2018 MAR -6 PM 3: 23

N. MIYATA
CLERK

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAI'I

| | |
|---|---|
| GAURAV THAKRAL, M.D.<br><br>Plaintiff,<br><br>vs.<br><br>HAWAI'I RESIDENCY PROGRAMS, INC.; UNIVERSITY OF HAWAI'I; JOHN DOES 1-20; JANE DOES 1-20; DOE ENTITIES 1-20; and DOE GOVERNMENTAL ENTITIES 1-20,<br><br>Defendants. | CIVIL NO. 18-1-0144-01<br>(Declaratory Judgment)<br><br>FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, BREACH OF CONTRACT, AND DAMAGES; SUMMONS |

**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF, BREACH OF CONTRACT, AND DAMAGES**

Comes now Plaintiff GAURAV THAKRAL, M.D., by and through his attorneys, McCorriston Miller Mukai MacKinnon LLP, and for his First Amended Complaint against Defendants HAWAI'I RESIDENCY PROGRAMS, INC.; UNIVERSITY OF HAWAI'I; JOHN DOES 1-20; JANE DOES 1-20; DOE ENTITIES 1-20; and DOE GOVERNMENTAL UNITS 1-20, and hereby alleges and avers as follows:

373450.2                    EXHIBIT "1"

## PARTIES

1. At all times relevant herein, Plaintiff GAURAV THAKRAL, M.D. ("Plaintiff") was a resident of the City and County of Honolulu, State of Hawai'i.

2. At all times relevant herein, Defendant HAWAI'I RESIDENCY PROGRAMS, INC. ("HRP"), was a domestic nonprofit corporation with its principal place of business in the City and County of Honolulu, State of Hawai'i.

3. At all times relevant herein, Defendant UNIVERSITY OF HAWAI'I ("UH") is an agency of the State of Hawai'i established by Article X, Section 5 of the Hawai'i State Constitution.

4. Defendants JOHN DOES 1-20, JANE DOES 1-20, DOE ENTITIES 1-20 and DOE GOVERNMENTAL UNITS 1-20 are fictitiously-named persons or entities whose identities, capacities or involvement in the subject matter of this case are presently unknown but who are believed to be responsible in some matter for the claims asserted by Plaintiff herein as agents, owners, assignees, delegates, successors, employees, shareholders, affiliates, subsidiaries, alter egos, partners, co-participants, or other representatives of the named Defendants or otherwise stand in such relationship with Defendants, or participated in such conduct therewith as to be liable to Plaintiff for the claims asserted herein. Plaintiff has conducted a diligent inquiry as to the identities, capacities and involvement of the Doe Defendants fictitiously named in this paragraph, but is unable at this time to ascertain such matters with the requisite certainty to name them in this First Amended Complaint (hereinafter, HRP and UH, and the fictitiously named Doe Defendants are collectively referred to as "Defendants").

## JURISDICTION AND VENUE

5. All matters described in this First Amended Complaint, and the claims for relief herein, arose in the County of Hawai'i, State of Hawai'i, and thus venue is proper in this Court pursuant to Hawai'i Revised Statutes ("HRS") Sections 603-21.5, 603-21.9, 603-36(5), 632-1, and Article I, Section 5 of the Hawai'i State Constitution.

## FACTS COMMON TO ALL COUNTS

6. On or about April 21, 2016, Plaintiff and HRP entered into an agreement ("Agreement"), wherein HRP agreed to accept Plaintiff as a Level 2 Resident in the University of Hawai'i Pathology Residency Training Program ("UH Residency Program") for the period beginning on July 1, 2016 and ending on June 30, 2017.

7. As set forth in the Agreement, Plaintiff was to be compensated annually in the amount of $55,777.00.

8. Plaintiff was employed by HRP in accordance with the policies and procedures of the University of Hawai'i John A. Burns School of Medicine ("JABSOM") and the Accreditation council for Graduate Medical Education ("ACGME").

9. The parties agreed that the ACGME Sponsoring Institution for the UH Residency Program is JABSOM and that "JABSOM has sole authority and responsibility for all academic decisions for all [r]esidents in all of its GME Programs, in accordance with all ACGME requirements."

10. Pursuant to the Agreement, Plaintiff's day-to-day supervision was overseen by the UH Residency Program Director appointed by JABSOM.

11. For all relevant periods described herein, the UH Residency Program Director is Amy Powers, M.D. ("Dr. Powers").

12. Dr. Powers, in her discretion, has the power to impose sanctions upon Plaintiff under the Agreement.

13. Similarly, HRP, as employer, has the power to impose sanctions for non-academic conduct, as well as further sanctions which are a consequence of the academic sanctions imposed upon Plaintiff by the UH Residency Program, including permanent dismissal.

14. In the event a sanction is imposed, Plaintiff may, pursuant to the Agreement, invoke grievance rights described in the HRP and JABSOM Grievance Policy ("UH/HRP Grievance Policy").

15. On or about October 24, 2016, Defendants issued Plaintiff an Academic Notice ("Academic Notice") due to his "overall academic performance and the results of [his] Targeted Mentorship," indicating that his performance was "substandard."

16. Plaintiff participated in remediation with the intent of improving his performance.

17. In or about late November 2016, Plaintiff sought out the professional services of Karen A. Tyson, Psy.D. ("Dr. Tyson") for a neuropsychological evaluation to examine Plaintiff's perceived difficulty with memory and test anxiety.

18. In her January 11, 2017 report, Dr. Tyson diagnosed Plaintiff as having "[s]pecific learning disorder with impairment in reading, dyslexia, anxiety, and stressors caused by high academic and professional demands."

19. From about January to March 2017, Plaintiff disclosed his disability to Defendants multiple times.

20. Nevertheless, on or about March 17, 2017, Defendants issued Plaintiff a Notice of Prospective Dismissal ("First Notice").

21. The First Notice, which was signed by Dr. Powers, indicates that the Clinical Competency Committee ("CCC") had "voted unanimously against further remediation attempts and to instead discontinue [Plaintiff's] training, and [Dr. Powers] accepted the recommendation."

22. Dr. Powers noted that "dismissal is warranted."

23. Dr. Powers went on to advise that Dr. Thakral "may file a grievance as to this prospective dismissal" in accordance to the UH/HRP Grievance Policy, but "[Plaintiff] [is] on leave status until the prospective dismissal becomes a final dismissal, subject to grievance rights."

24. Plaintiff was barred from entering the University Tower except to meet with Dr. Powers "if requested to do so."

25. There is nothing in the First Notice that discusses Plaintiff's rights to rejoin the program in the event that his grievance succeeds.

26. On or about March 31, 2017, Plaintiff submitted a grievance in accordance to the UH/HRP Grievance Policy and requested, among other things, reasonable accommodations for his previously disclosed disability, that the First Notice be set aside, and a hearing.

27. From April to December 2017, the parties discussed the accommodations Dr. Tyson had recommended.

28. In a follow-up letter to Plaintiff on November 21, 2017, Dr. Powers stated in response to Dr. Thakral's revelation that he suffers from dyslexia: "the subsequently disclosed medical information does not warrant revoking the prospective dismissal."

29. Dr. Powers further notes that "[t]he Program does not find or state that your condition constitutes a disability but nevertheless has proceeded with considering potential accommodations."

30. On or about November 21, 2017, Defendants issued a second notice of dismissal ("Second Notice"), alleging that Plaintiff had not disclosed certain information in his ERAS application.

31. Plaintiff responded to the Second Notice on December 5, 2017 insisting that he had disclosed all required information on this ERAS application.

32. Under the UH/HRP Grievance Policy, Plaintiff has a right to a due process hearing.

33. Plaintiff timely asserted his right to grieve the second, unfounded notice of prospective dismissal and requested that the hearings on both the First Notice and Second Notice be consolidated.

34. The hearing occurred on January 30, 2017. Plaintiff did not elect to appear because the hearing failed to provide for basic fairness nor did it protect his statutory and constitutional rights.

35. The result of the hearing was that Plaintiff was ordered dismissed from the program.

36. If the dismissal caused by Defendants stands, Plaintiff's career as a physician will suffer irreparable harm as his chance of being accepted into a residency program elsewhere to complete his training would be virtually impossible.

## COUNT I
(Violation of Procedural Due Process)

37. Plaintiff re-alleges and hereby incorporates by this reference paragraphs 1 through 34, inclusive, as if set forth in full herein.

373450.2                          6

38. The UH's entanglement with HRP is indisputable. As state actors, there is no doubt that Defendants must accord Plaintiff constitutional due process protections, which it fails to provide under the UH/HRP Grievance Policy.

39. The UH/HRP Grievance Policy is rife with constitutional infirmities starting with the fact that Dr. Powers appoints the Hearing Committee and its Chairperson and then is the final arbiter of their recommendation.

40. Where, as here, Dr. Powers will be called as a witness in Plaintiff's grievance hearing, she cannot be a judge in her own case without depriving Plaintiff of a fair process.

41. Dr. Powers has already dismissed one of Plaintiff's defenses, his diagnosis of dyslexia, a disability requiring reasonable accommodations.

42. Accordingly, Plaintiff requested that Dr. Powers be prohibited from any decision-making role in Plaintiff's future hearing pursuant to the UH/HRP Grievance Policy.

43. On January 29, 2018 (one day prior to the hearing), Defendants refused to comply with this request in violation of their own policies and procedures which state that:

> "[I]f the Program Director has an actual conflict of interest, an apparent conflict of interest, or believes that fundamental fairness suggests recusal or disposition by another authority, the Program Director shall forward the matter to the DIO who may either decide the grievance or forward it to either the cognizant Department Chair or to the Dean, John A. Burns School of Medicine, for resolution."

44. Even if Dr. Powers is replaced, Plaintiff is still at sea with a fatally flawed, unconstitutional process under the UH/HRP Grievance Policy, especially because Defendants have denied Plaintiff access to his entire personnel record in order to prepare for his defense.

45. Section "T" of the UH/HRP Grievance Policy states that:

> The Committee may, in rendering its recommendation, consider all matters placed before it by the Resident, the Program Representative, or its own members. It may also consider, on its own initiative, the Resident's complete personnel record and any pertinent medical or patient records. It may also call such witnesses as it deems

appropriate. Each side shall be offered the opportunity to examine and respond to such additional evidence if the Committee determines that fundamental fairness so requires.

46. According to Defendants' counsel, while this policy does not entitle Plaintiff to a review of his or her personnel file, it permits the Hearing Committee, if it chooses, to review the personnel record and, "if the Committee determines that fundamental fairness so requires," afford each side the opportunity to examine and respond.

47. In other words, it is left to the Hearing Committee: (1) to decide whether to even review any part of the personnel record; and (2) only if the Hearing Committee engages in such review, to then decide whether fundamental fairness requires that the resident and Program examine and respond to the selected material.

48. The fact that Defendants have barred Plaintiff from reviewing his <u>own personnel file</u>, but the Hearing Committee can freely review it and then determine whether it is fair to allow Plaintiff to do the same only with respect to the "selected material" deprives him of due process of law.

49. Any evidence, directions, information, etc. that the Hearing Committee receives that may influence the Hearing Committee's decision and to which Plaintiff has no opportunity to question is an invalid *ex parte* communication and Plaintiff would have been deprived of a fair hearing.

50. The UH/HRP Grievance Policy also deprives Plaintiff of the right to be represented at the hearing by legal counsel.

51. Although Plaintiff "may be accompanied at the hearing by an attorney or other advocate," "<u>such advocate may not address the Hearing</u>," under the UH/HRP Grievance Policy.

52. On the other hand, the Hearing Committee and the Program both have lawyers who no doubt participated in the process.

53. The UH/HRP Grievance Policy provides as follows: "[t]he Resident and Program Representative may present witnesses, documents, or other evidence that are material to the issues to be considered, and may submit oral or written statements concerning any such issues."

54. Under the UH/HRP Grievance Policy, the Hearing Committee may receive legal advice even after the close of the grievance proceedings, without any notice to the Plaintiff.

## COUNT II
### (Breach of Contract)

55. Plaintiff re-alleges and hereby incorporates by this reference paragraphs 1 through 54, inclusive, as if set forth in full herein.

56. As a result of Defendants' above-described acts, Defendants breached the Agreement.

57. Plaintiff has to date fully performed his obligations as required by the Agreement, and is not in default of his obligations under the Agreement.

58. As a proximate result of Defendants' breach of the Agreement, Plaintiff has been damaged in an amount presently unascertained but will be proven at trial.

## COUNT III
### (Declaratory Relief)

59. Plaintiff re-alleges and hereby incorporates by this reference paragraphs 1 through 58, inclusive, as if set forth in full herein.

60. As a result of the above-described events and circumstances, there is an actual and continuing controversy between Plaintiff and Defendants regarding his contractual and constitutionally protected right to a fair grievance hearing.

61. A declaratory judgment will terminate the controversy that Defendants have created by not subjecting Plaintiff to a process that is fundamentally unfair and by refusing to agree to any of Plaintiff's proposed amendments to the grievance hearing process.

62. Therefore, Plaintiff prays for a declaration that Defendants' UH/HRP Grievance Policy is an unconstitutional deprivation of his right to due process of law.

## COUNT IV
(Injunctive Relief)

63. Plaintiff re-alleges and hereby incorporates by this reference paragraphs 1 through 62, inclusive, as if set forth in full herein.

64. If Defendants continue to deny Plaintiff a fair hearing, Plaintiff will be irreparably harmed for which there is no adequate remedy at law.

65. Plaintiff is entitled to a mandatory injunction ordering Defendants to immediately cease the hearing currently scheduled for January 30, 2018.

## REQUESTS FOR RELIEF

WHEREFORE, Plaintiff prays as follows:

A. That judgment be entered in favor of Plaintiff and against Defendants as set forth in the foregoing Counts;

B. For a binding declaration by this Court that Defendants' actions in subjecting Plaintiff to the policies and procedures set forth in the UH/HRP Grievance Policy is unconstitutional in violation of his right to due process of law, and in breach of his contract;

C. That the Court issue a temporary restraining order, preliminary injunction, and/or a permanent injunction preventing Defendants from implementing Plaintiff's termination from the Program;

D. For an award of general, special, and punitive damages against Defendants in an amount to be determined at trial;

E. That Plaintiff be awarded its reasonable attorney's fees and costs of suit, pre and post judgment interest; and

F. That Plaintiff be awarded such other and further relief as the Court deems just and proper.

DATED: Honolulu, Hawai'i, March 6, 2018.

_____
ROBERT G. KLEIN
KURT W. KLEIN

Attorneys for Plaintiff
GAURAV THAKRAL, M.D.

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAI'I

| | |
|---|---|
| GAURAV THAKRAL, M.D. | ) CIVIL NO. 18-1-0144-01 |
| | ) (Declaratory Judgment) |
| Plaintiff, | ) |
| | ) SUMMONS |
| vs. | ) |
| | ) |
| HAWAI'I RESIDENCY PROGRAMS, | ) |
| INC.; UNIVERSITY OF HAWAI'I; JOHN | ) |
| DOES 1-20; JANE DOES 1-20; DOE | ) |
| ENTITIES 1-20; and DOE | ) |
| GOVERNMENTAL ENTITIES 1-20, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## SUMMONS

STATE OF HAWAI'I

TO THE ABOVE-NAMED DEFENDANT(S):

YOU ARE HEREBY SUMMONED and required to file with the court and to serve upon McCorriston Miller Mukai MacKinnon LLP, Plaintiff's attorneys, whose address is Five Waterfront Plaza, 4th Floor, 500 Ala Moana Boulevard, Honolulu, Hawai'i 96813, an answer to the First Amended Complaint which is herewith served upon you, within twenty (20) days after service of this Summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the First Amended Complaint.

Pursuant to Rule 4(b) of the Hawai'i Rules of Civil Procedure, this Summons shall not be personally delivered between 10:00 p.m. and 6:00 a.m. on premises not open to the general public, unless a judge of the above-entitled court permits, in writing on this Summons, personal delivery during those hours.

373450.2

A failure to obey this Summons may result in an entry of default and default judgment against the disobeying person or party.

DATED: Honolulu, Hawai'i, MAR 0 6 2018 _____.

N. MIYATA

CLERK OF THE ABOVE ENTITLED COURT